UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LISA SMITH, | ) | |
| ELISA STROFFOLINO, | ) | |
| JOEL KAMISHER, | ) | |
| DOTTIE NIKOLICH, | ) | |
| SABRINA MUNOZ, | ) | |
| HILARY FRENCH, | ) | |
| AMY CLARK, | ) | |
| REGINALD REESE, | ) | |
| SONYA ALBERT, | ) | |
| COLLEEN RICKARD, | ) | |
| KRISTINA ACCARDO, | ) | |
| ROGER WINSTANLEY, | ) | |
| BONNIE BENNETT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-01003-JPH-KMB |
| | ) | |
| APRIA HEALTHCARE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING MOTION FOR PRELIMINARY CLASS APPROVAL**

Plaintiffs allege that Defendant Apria Healthcare LLC was the subject of a data breach in 2023 that affected millions of individuals. Plaintiffs have filed a motion for preliminary approval of the class action settlement and release. Dkt. 134. Plaintiffs seek preliminary approval of a proposed settlement agreement and release (the "Settlement Agreement and Release") with Apria Healthcare, certification of the Settlement Class for settlement purposes, preliminary designation of Plaintiffs as class representatives, preliminary appointment of class counsel, preliminary appointment of a settlement administrator, and notice directed to all class members who would be bound

by the Settlement Agreement and Release. *Id.* Apria Healthcare does not oppose the motion. *Id.* For the reasons stated below, Plaintiffs' motion for preliminary approval, dkt. [134], is **GRANTED**.

## I.
## Facts and Background

On October 23, 2023, Plaintiffs filed its amended consolidated class action complaint. Dkt. 52. In it, Plaintiffs allege that Apria Healthcare, a home healthcare equipment provider, admitted that it suffered a data breach that affected millions of its patients and customers between April and May of 2019 and August and October of 2021 (the "Illegal Hacking Events"). *Id.* at 7 ¶ 43, 8 ¶ 46; dkt. 134-2 at 6 (Settlement Agreement and Release § 1.21). The Illegal Hacking Events compromised the private information of over 1.8 million Apria Healthcare patients. Dkt. 52 at 8 ¶ 46. This information included "personal, medical, health insurance, and financial information, as well as Social Security numbers." *Id.*

Plaintiffs allege that Apria Healthcare became aware of the Illegal Hacking Events in September 2021 but did not disclose the breach to customers until May 2023. *Id.* at 8–9 ¶ 48. Plaintiffs further allege that Apria Healthcare had a duty to adopt reasonable measures to protect Plaintiffs' protected information from involuntary disclosure to third parties. *See id.* For relief, "Plaintiffs demand that Apria compensate Settlement Class Members for their losses and protect their identities." Dkt. 134-1 at 8.

On March 5, 2025, Plaintiffs filed a motion for preliminary approval of class action settlement.[1] Dkt. 134. The proposed Representative Plaintiffs are Lisa Smith, Robert N. Herrera, Suzanne Cuyle, Leonardo DePinto, Joel Kamisher, Debbie Bobbitt, Dottie Nikolich, Sabrina Munoz, Hilary French, Elisa Stroffolino, Amy Clark, Reginald Reese, Rita May, Tammie Creek, Sonya Albert, Paul Kramer, Chad Hohenbery, Colleen Rickard, Kristinia Accardo, Roger Winstanley, and Bonnie Bennett. Dkt. 134-2 at 9–10 (Settlement Agreement and Release § 1.47). The proposed class (the "Class") includes:

> [A]ll individuals who received actual or constructive notice and/or were mailed a notice by Apria that their information may have been compromised as a result of the Illegal Hacking Events and/or as a result of prior unauthorized access to or disclosure of Protected Information. Excluded from the Settlement Class are: (1) the judges presiding over the Class Action Lawsuit, members of their staff, and members of their direct families; (2) Defendant and any other Releasee; (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

*Id.* at 9 (Settlement Agreement and Release § 1.44).

Plaintiffs have submitted to the Court a 53-page Settlement Agreement and Release that would resolve their claims against Apria Healthcare. Dkt. 134-2. Some of the critical provisions are:

- Apria Healthcare will pay $6,375,000 in cash to settle the claims of the Class. *Id.* at 10, 12 (Settlement Agreement and Release §§ 1.48, 2.5).

- No portion of the Settlement Fund will revert to Apria Healthcare. *Id.* at 11 (Settlement Agreement and Release § 2.2).

- All Settlement Class Members may submit a claim for up to $2,000 for reimbursement of out-of-pocket monetary losses or expenses that

---

[1] The Order incorporates the defined terms set forth in the Settlement Agreement and Release, dkt. 134-2.

are fairly traceable to and reasonably resulting from the Illegal Hacking Event. *Id.* at 12 (Settlement Agreement and Release § 3.1).

- To receive reimbursement for Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form (either in paper form or on the Settlement Website) that includes the following: (i) third-party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the costs, if the nature of the costs is not apparent from the documentation alone. Third-party documentation can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the costs incurred. *Id.* at 12–13 (Settlement Agreement and Release § 3.2).

- Out-of-Pocket Losses Claim Forms may be submitted at any time on or before the date that is 90 days after entry of the Final Order Approving Settlement and Judgment. *Id.* at 13 (Settlement Agreement and Release § 3.2).

- After the distribution of the Fee Award and Costs, Notice and Administrative Expenses, Service Award Payments, and Out-of-Pocket Losses or Expenses, the Settlement Administrator will make pro rata cash settlement payments of the remaining Settlement Fund to each Settlement Class Member who submits a valid claim for this benefit. *Id.* (Settlement Agreement and Release § 4.1).

- Apria Healthcare agreed to make Business Practice Adjustments in the following areas: (i) enhanced cybersecurity training and awareness program, (ii) enhanced data security policies, (iii) enhanced security measures, (iv) further restricting access to personal information, and (v) enhanced monitoring and response capability. *Id.* at 15 (Settlement Agreement and Release § 7.1).

- If technological or industry developments, or intervening changes in law or business practices render specific Business Practice Adjustments obsolete or make compliance by Apria Healthcare with them unreasonable or technically impractical, Apria Healthcare may modify its business practices as necessary to ensure appropriate security practices are followed. *Id.* at 15–16 (Settlement Agreement and Release § 7.2).

- All costs associated with implementing the Business Practice Adjustments will be borne by Apria Healthcare separate and apart from the Settlement Fund. *Id.* at 16 (Settlement Agreement and Release § 7.2).

- Within twenty-eight days after the Court grants Plaintiffs' motion for preliminary class approval, Apria Healthcare will provide the Settlement Class List to the Settlement Administrator.  Within twenty-one days[2] after receipt of the Settlement Class List, the Settlement Administrator will mail and email notices to the Class members.  *Id.* at 16 (Settlement Agreement and Release § 9.1).

- Class members may opt out of the Class by submitting requests for exclusion to the Settlement Administrator up to 60 days after the Notice Deadline.  *Id.* at 17 (Settlement Agreement and Release § 10.1).

- Class members may object to the Settlement Agreement and Release by submitting written objections to the Settlement Administrator up to 60 days after the Notice Deadline.  *Id.* (Settlement Agreement and Release § 10.2).

- The Settlement Administrator must first use the Net Settlement Fund to make payments for Approved Claims for Out-of-Pocket Losses.  The Settlement Administrator shall then use the remaining funds in the Net Settlement Fund to make distributions for Pro Rata Cash Payments.  *Id.* at 15 (Settlement Agreement and Release § 6.2).

- If the aggregate amount of all payments for Out-of-Pocket Losses exceeds the total amount of the Net Settlement Fund, then the value of such payments shall be reduced on a pro rata basis, such that the aggregate value of all payments for Out-of-Pocket Losses does not exceed the Net Settlement Fund.  *Id.* (Settlement Agreement and Release § 6.3).

- Any Net Settlement Funds that remain after the distribution and reissuance of all payments from the Settlement Fund, including for settlement checks that are not cashed by the deadline to do so, will be distributed to a *cy pres* recipient that is jointly proposed by the parties and approved by the Court.  *Id.* at 13–14 (Settlement Agreement and Release § 4.1).

- On the Effective Date, Plaintiffs and Class Members will release all known and unknown claims against Apria Healthcare based on the Illegal Hacking Event.  *Id.* at 7–8, 11, 21–22 (Settlement Agreement and Release §§ 1.37–39, 1.54, 14).

---

[2] This section of the Settlement Agreement and Release says "twenty-one (28) days."  § 9.1.

- Class counsel will apply to the Court for an award of attorneys' fees of up to one-third of the Cash Settlement Fund, plus reimbursement of its reasonable Litigation Costs and Expenses not to exceed $50,000. *Id.* at 22 (Settlement Agreement and Release § 15.1).

- Class counsel will move for Service Award Payments of $3,000 for each Plaintiff, for a total of $63,000. *Id.* (Settlement Agreement and Release § 15.3).

- The Settlement Agreement and Release is not contingent on the Court's approval of the Service Award Payments. *Id.* at 23 (Settlement Agreement and Release § 15.4).

## II.
## Applicable Law

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1982). "Federal Rule of Civil Procedure 23 governs class actions." *Santiago v. City of Chicago*, 19 F.4th 1010, 1016 (7th Cir. 2021). "Rule 23 gives the district courts broad discretion to determine whether certification of a class-action lawsuit is appropriate," *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008), and "provides a one-size-fits-all formula for deciding the class-action question," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010).

A court's approval is required when "a class [is] proposed to be certified for the purposes of settlement." Also, courts must direct notice of a settlement class "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). A court is authorized to direct notice only if the court "will likely be able to (i) approve the proposal under 23(e)(2); and (ii) certify the class for purposes of the judgment on the proposal." Fed. R. Civ. P.

23(e)(1)(B).  Rule 23(e)(2) requires that a Court determine the settlement is "fair reasonable, and adequate" before approving a binding class settlement.  *See also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014).  The Court's notice must meet the requirements of Rule 23(c)(2)(B).

"Rule 23(a) enumerates four—and only four—requirements for class certification: numerosity, commonality, typicality, and adequacy of representation."  *Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022).  In addition to those "prerequisites," the class must fit one of Rule 23(b)'s "particular types of classes, which have different criteria."  *Santiago*, 19 F.4th at 1016.  Here, the parties seek class certification under Rule 23(b)(3), dkt. 134-1 at 21, so "common questions of law or fact must predominate over individual inquiries, and class treatment must be the superior method of resolving the controversy," *Santiago*, 19 F.4th at 1016.

"A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites for class certification have been met."  *Santiago*, 19 F.4th at 1016.  When parties seek class certification as part of a settlement, the provisions of Rule 23 "designed to protect absentees by blocking unwarranted or overbroad class definitions . . . demand undiluted, even heightened, attention."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

**III.**

**Analysis**

**A. Class certification**

The fact that the parties have reached a settlement is relevant to the class-certification analysis. *See Smith v. Sprint Communs. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004); *Amchem Prods.*, 521 U.S. at 618–20. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Smith*, 387 F.3d at 614 (quoting *Amchem Prods.*, 521 U.S. at 620). A court may not, however, "abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.' In some ways, the Rule 23 requirements may be even more important for settlement classes." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). "This is so because certification of a mandatory settlement class, however provisional technically, effectively concludes the proceeding save for the final fairness hearing." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 849 (1999).

Here, Plaintiffs have met their burden of satisfying the Rule 23(a) and (b) requirements.

### 1. Rule 23(a)(1) requirements

#### a. Numerosity

To satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the proposed Class consists of:

> [A]ll individuals who received actual or constructive notice and/or were mailed a notice by Apria that their information may have been compromised as a result of the Illegal Hacking Events and/or as a result of prior unauthorized access to or disclosure of Protected Information. Excluded from the Settlement Class are: (1) the judges presiding over the Class Action Lawsuit, members of their staff, and members of their direct families; (2) Defendant and any other Releasee; (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

Dkt. 134-2 at 9 (Settlement Agreement and Release § 1.44). Plaintiffs contend that this amounts to 1,869,598 members. Dkt. 134-1 at 21. Courts in the Seventh Circuit have found that substantially smaller classes satisfy the numerosity requirement. *See Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 860 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."); *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). Because the proposed Class is so numerous that joinder of all members would be impracticable, Plaintiffs have satisfied the numerosity requirement.

#### b. Commonality

To satisfy the commonality requirement, there must "be one or more common questions of law or fact that are capable of class-wide resolution and

are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018) (citing *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015)).  Here, Plaintiffs contend that Apria Healthcare failed to adequately safeguard the Settlement Class's protected information, and that failure led to the Illegal Hacking Event.  Dkt. 134-1 at 22.  This is undoubtedly a question of law and fact that is common to the proposed Class.  For that reason, Plaintiffs have satisfied the commonality requirement.

### c. Typicality

To satisfy the typicality requirement, "the claims or defenses of the representative party [must] be typical of the claims or defenses of the class." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000)).  "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).  "Although 'the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,' the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro*, 580 F.3d at 492 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Plaintiffs have satisfied the typicality requirement because their claims are typical of those of the Class since their protected information was also breached after the Illegal Hacking Event.

### d. Adequacy of Representation

To satisfy the adequacy of representation requirement, the representative parties must "fairly and adequately protect the interests of the class." *Amchem Prods.*, 521 U.S. at 625. "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citing *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)).

Plaintiffs have satisfied the adequacy-of-representation requirement. Plaintiffs' claims are typical of those brought by other Class members, and their interests appear to be entirely consistent with those of the other Class members because they—like the other Class members—seek to maximize the Class's recovery from Apria Healthcare for the alleged breaches. Plaintiffs have actively participated in this litigation by having provided documents, reviewed pleadings, remained in regular contact with counsel, and kept apprised of the status of this litigation and settlement negotiations through the entire case. Dkt. 134-3 at 7 ¶ 31. And the fact that Plaintiffs seek Service Awards does not undermine the adequacy of their representation. *See Scott v. Dart*, 99 F.4th

1076, 1082–83 (7th Cir. 2024) ("[I]ncentive awards to named plaintiffs are
permitted so long as they comply with the requirements of Rule 23.").

Plaintiffs' counsel has also invested substantial time and resources in
this case by investigating the underlying facts, researching the applicable law,
litigating this case, participating in mediation, and negotiating a detailed
settlement. *Id.* at 4 ¶ 16, 6 ¶ 27. Last, Plaintiffs' counsel has experience
litigating complex consumer class actions, including data privacy suits, *id.* at 6
¶ 26, and do not appear to have interests that conflict with those of the Class,
*id.* at 7 ¶ 33.

### 2. Rule 23(b)(3) requirements

Having determined that Plaintiffs' proposed Class satisfies all of Rule
23(a)'s requirements, the Court must evaluate whether it satisfies any one of
the three requirements in Rule 23(b). Certification of a class under Rule
23(b)(3) is proper if "the questions of law or fact common to class members
predominate over any questions affecting only individual members, and [when]
a class action is superior to other available methods for fairly and efficiently
adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This rule requires two
findings: predominance of common questions over individual ones and
superiority of the class action mechanism. *Id.* In assessing whether those
requirements have been met, courts should consider:

> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions; (B) the extent and nature of
> any litigation concerning the controversy already begun by or against
> class members; (C) the desirability or undesirability of concentrating the
> litigation of the claims in the particular forum; and (D) the likely
> difficulties in managing a class action.

*Id.*

Plaintiffs have shown that common questions of law and fact predominate. Specifically, the core issue—whether Apria Healthcare failed to adequately safeguard the Class members' protected information—is identical for all Class Members. *See* dkt. 134-1 at 22, 25.

Furthermore, Plaintiffs have shown that, for this case, a class action is vastly "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It will be the most efficient way to resolve Plaintiffs' claims, especially considering that Plaintiffs would have a difficult and costly task in seeking relatively small damages solely on an individual basis. *See* dkt. 134-1 at 25. Accordingly, class resolution would be superior to other available methods of pursuing these claims.

The Court certifies the class for settlement purposes under Rule 23(b)(3).

**B. Preliminary Appointment of Class Counsel**

After a court certifies a Rule 23 class, the court is required to appoint class counsel to represent the class members. *See* Fed. R. Civ. P. 23(g)(1). In appointing class counsel, the court must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

13

Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs are represented by Lynn A. Toops of Cohen & Malad LLP and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC. Dkt. 134-2 at 5; dkt. 134-3 at 1 ¶ 1. These attorneys have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' claims. *See* dkt. 134-3 at 6 ¶ 27. Plaintiffs' counsel also have experience litigating consumer class actions, including numerous data breach cases they have filed, litigated, and settled around the country. Dkt. 134-1 at 24; *see also* dkt. 134-3 at 11–39 (Joint Declaration Exhibits 1 and 2, which outline the expertise and prior experience of counsel and their respective law firms).

As such, the Court preliminarily appoints Lynn Toops and Gary Klinger as Class counsel.

### C. Preliminary Settlement Approval

#### 1. Adequacy of representation of the class

As explained above, Plaintiffs and Class Counsel have adequately represented the Class.

#### 2. Settlement Agreement was negotiated at arm's length

The Settlement Agreement and Release was negotiated at arm's length. As explained in Plaintiffs' brief, the Settlement Agreement and Release is the product of years of litigation. *See* dkt. 134-1 at 8–11. Furthermore, the Settlement Agreement and Release was the result of a formal mediation, informal settlement negotiations, and a settlement conference. *Id.* Last, the consideration to be paid by Apria Healthcare is $6,375,000 in cash, and no

portion of the Settlement Fund will revert to Apria Healthcare. *Id.* at 10–12 (Settlement Agreement and Release §§ 1.48, 2.2, 2.5).

### 3. Settlement Agreement treats class members equitably relative to each other

The Settlement Agreement and Release treats Class members equitably relative to each other. It guarantees Class members a right to submit claims for Out-of-Pocket Losses and Attested Time so Class members who experienced "actual" harms may be recompensed for those harms, and all Class members are eligible to receive a Pro Rata Cash Payment no matter their losses. *See* dkt. 134-1 at 31.

### 4. The relief provided by the Settlement Agreement is adequate

The $6,375,000 in relief is adequate. All Class members are eligible to receive a Pro Rata Cash Payment no matter their losses, and Class members who experienced "actual" harms may submit claims for Out-of-Pocket Losses and Attested Time. *See* dkt. 134-1 at 31. In addition, the *cy pres* relief will be used only for the portion of Net Settlement Funds, if any, that remain unclaimed after out-of-pocket losses claims and pro rata cash payments to Class members. Dkt. 134-2 at 13–14 (Settlement Agreement and Release § 4.1).

### 5. The strength of Plaintiffs' case compared against the amount of Apria Healthcare's settlement offer

The most important settlement-approval factor is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs.*, 463 F.3d at 653 (quoting *In re Gen. Motors Corp.*

*Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)).  Here, continued litigation with Apria Healthcare presents significant risks and costs—the most obvious risk is that Plaintiffs will not be successful on their claims.  Furthermore, "[e]ven if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory.  Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'"  *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (quoting *Reynolds*, 288 F.3d at 284).  Moreover, as explained above, the consideration to be paid by Apria Healthcare is $6,375,000 in cash, and no portion of the Settlement Fund will revert to Apria Healthcare.  Dkt. 134-1 at 10–12 (Settlement Agreement and Release §§ 1.48, 2.2, 2.5).  Accordingly, the strength of Plaintiffs' case compared to Apria Healthcare's proposed settlement weighs in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement and Release.

### 6. The likely complexity, length, and expense of continued litigation

The likely complexity, length, and expense of trial weighs heavily in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement and Release.  Continuing to litigate this case will require vast expense and a great deal of time, on top of that already expended.

16

### 7. Opposition to the Settlement Agreement

Because the parties have not yet sent the notice, it is premature to assess this factor.

### 8. The opinion of experienced counsel

The opinion of counsel weighs heavily in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement and Release. Courts are "entitled to rely heavily on the opinion of competent counsel," *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980)); *Isby v. Bayh*, 75 F.3d, 1191, 1200 (7th Cir. 1996), and as explained above, counsel for the parties are experienced and highly competent.  Further, there is no indication that the Settlement Agreement and Release is the victim of collusion.  *See Isby*, 75 F.3d at 1200.  Class counsel will be paid up to one-third of the Cash Settlement Fund, plus reimbursement of its reasonable Litigation Costs and Expenses not to exceed $50,000.  Dkt. 134-2 at 22 (Settlement Agreement and Release § 15.1).

### 9. The stage of the proceedings and the amount of discovery completed

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325.  This litigation has been ongoing for multiple years, including formal mediation, informal settlement negotiations, and a settlement conference.  Dkt. 134-1 at 8–11.  A partial motion to dismiss has been filed.  Dkt. 59.  In response to

formal and informal discovery requests, Apria Healthcare "produced
information that addressed the manner and mechanism of the Illegal Hacking
Events, the number of impacted individuals nationwide, and Apria's security
enhancements implemented following the Illegal Hacking Events." Dkt. 134-3
at 4 ¶ 12. While there is more discovery that could be done, there is no
indication that additional discovery would further assist the parties in reaching
a settlement agreement that is fair to the Class. Accordingly, this factor weighs
in favor of the fairness, reasonableness, and adequacy of the Proposed
Settlement Agreement.

### D. Class Notice

Under Federal Rule of Civil Procedure Fed. R. Civ. P. 23(c)(2)(B), a notice
must provide:

> the best notice that is practicable under the circumstances, including
> individual notice to all members who can be identified through
> reasonable effort. The notice must clearly and concisely state in plain,
> easily understood language: (i) the nature of the action; (ii) the definition
> of the class certified; (iii) the class claims, issues, or defenses; (iv) that a
> class member may enter an appearance through an attorney if the
> member so desires; (v) that the court will exclude from the class any
> member who requests exclusion; (vi) the time and manner for requesting
> exclusion; and (vii) the binding effect of a class judgment on members
> under Rule 23(c)(3).

Further, when presented with a proposed class settlement, a court "must
direct notice in a reasonable manner to all class members who would be bound
by the proposal." Fed. R. Civ. P. 23(e)(1). "The contents of a Rule 23(e) notice
are sufficient if they inform the class members of the nature of the pending
action, the general terms of the settlement, that complete and detailed
information is available from the court files, and that any class member may

appear and be heard at the hearing."  3 Newberg on Class Actions § 8:32 (4th ed. 2010).

The proposed notice satisfies Rule 23's requirements and puts Class members on notice of the Settlement Agreement and Release.  The Settlement Administrator will mail and email notices to the Class members.  Dkt. 134-2 at 16 (Settlement Agreement and Release § 9.1).  Notice will also be published on a website established by the Settlement Administrator.  *Id.* at 18 (Settlement Agreement and Release § 11.1(d)).  The Settlement Administrator will maintain a toll-free hotline to answer questions regarding the Settlement Agreement and Release.  *Id.* (Settlement Agreement and Release § 11.1(e)).

Moreover, the proposed notice is appropriate because it describes the terms of settlement, informs the Class about the allocations of attorney's fees and expenses, explains how Class members may opt-out of the Class and object to the settlement, and provides specific information regarding the date time, and place of the fairness hearing.  Dkt. 134-2 at 38–53; *see Air Lines Stewards & Stewardesses Assoc. v. Am. Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) (notice that provided summary of proceedings to date, notified of significance of judicial approval of settlement and informed of opportunity to object at hearing satisfied due process).

### E. Preliminary Appointment of Settlement Administrator

Plaintiffs request the preliminary appointment of Kroll Settlement Administration, LLC to serve as Settlement Administrator.  Plaintiffs contend that "Kroll is a well-respected and reputable third-party administrator that was

mutually selected by the Parties," and that "Kroll is highly qualified to manage the entire settlement administration process."  Dkt. 134-3 at 8 ¶ 35.  Plaintiffs have engaged Kroll to conduct the notice and distribution processes.  *Id.*  Given the complexity and size of this case, Kroll's services in connection with implementing the notice plan will be helpful.  Therefore, the Court preliminarily appoints Kroll as Settlement Administrator.

### IV.
### Conclusion

Plaintiffs' Motion for Preliminary Approval, dkt. [134], is **GRANTED**.

Pursuant to Federal Rule of Civil Procedure 23(e)(1)(B), Plaintiffs have shown that the Court will likely be able to (i) approve the Settlement Agreement and Release under Rule 23(e)(2); and (ii) certify the Class for purposes of the Settlement Agreement and Release only.

The Court finds that it will likely be able to approve the Settlement Agreement and Release as fair, reasonable, and adequate, subject to the right of any Class Member to challenge the Settlement Agreement and Release at a hearing after notice has been disseminated to the class.

The Court finds that it will likely be able to hold that the proposed settlement consideration and class relief are fair, reasonable, adequate, and equitable for purposes of the Settlement Agreement and Release, and to approve the Release provided to the Releasees.

The Court preliminarily appoints Kroll Settlement Administration, LLC to serve as Settlement Administrator.  The Court also finds that it will likely be able to approve Kroll to serve as Settlement Administrator after final approval

and that it will likely be able to approve the Claim process. Kroll will be responsible for disseminating Class Notice in the form set forth at Exhibit B to the Settlement Agreement and Release and for undertaking all Settlement Administrator duties contemplated by the Settlement Agreement and Release prior to the Court's grant or denial of final approval of the Settlement Agreement and Release.

The Court preliminarily certifies the proposed Class and designates the following plaintiffs as Representative Plaintiffs: Lisa Smith, Robert N. Herrera, Suzanne Cuyle, Leonardo DePinto, Joel Kamisher, Debbie Bobbitt, Dottie Nikolich, Sabrina Munoz, Hilary French, Elisa Stroffolino, Amy Clark, Reginald Reese, Rita May, Tammie Creek, Sonya Albert, Paul Kramer, Chad Hohenbery, Colleen Rickard, Kristinia Accardo, Roger Winstanley, and Bonnie Bennett. The Court preliminarily appoints Lynn Toops and Gary Klinger as Class Counsel.

The preliminary certification of the proposed Class, the preliminary designation of class representatives, and the preliminary designation of Class counsel established by this Order shall be automatically vacated if the Settlement Agreement and Release is terminated or is disapproved by the Court, any appellate court and/or any other court of review, or if any of the Settling Parties successfully invokes its right to terminate the Settlement Agreement and Release, in which event the Settlement Agreement and Release and the fact that it was entered into shall not be offered by the Settling Parties

or construed as an admission or as evidence for any purpose, including the "certifiability" of any class.

The Court determines that distribution of the Class Notice to be given as set forth in the Notice Program is reasonable and the best practicable notice under the circumstances; satisfies Rule 23(h) of the Federal Rules of Civil Procedure; is reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the Settlement Agreement and Release, their right to object to and opt-out of the Settlement Agreement and Release, the effect of the Settlement Agreement and Release (including the releases to be provided thereunder), Class counsel's request for attorneys' fees, reimbursement of litigation expenses and settlement administration expenses, and the requested service awards for Plaintiffs; constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and meets the requirements of due process, the Federal Rules of Civil Procedure, and the United States Constitution.

The Court preliminarily finds that with an agreement between Plaintiffs and Apria Healthcare it will likely be able to certify and approve a settlement class under Federal Rule of Civil Procedure 23.

The Court preliminarily approves the Settlement Agreement and Release as sufficiently fair and reasonable to warrant sending notice to the Class preliminarily certified for settlement purposes and hereby directs Plaintiffs and Kroll to give notice to the class as set forth in the Settlement Agreement and Release.

Plaintiffs shall file proof by affidavit of the distribution of the Class Notice at or before the Fairness Hearing.

Any attorneys hired by individual members of the Class for the purpose of objecting to the Settlement Agreement and Release shall file with the Clerk of the Court and serve on Class counsel and Apria Healthcare's counsel a notice of appearance prior to the Fairness Hearing.

Class members who object to the settlement must follow the procedure as outlined in the Settlement Agreement and Release § 10.2. Unless otherwise ordered by the Court, Class members who do not timely make their objections as provided by that section will be deemed to have waived all objections and shall not be heard or have the right to appeal approval of the Settlement Agreement and Release, as outlined in the Settlement Agreement and Release § 10.2.

Class members who wish to exclude themselves must follow the procedure as outlined in the Settlement Agreement and Release § 10.1. Class members who do not file timely written requests for exclusion in accordance with the Settlement Agreement and Release shall be bound by all subsequent proceedings, orders, and judgments in this action, as outlined in the Settlement Agreement and Release § 10.1.

Class Counsel and Apria Healthcare's counsel shall promptly furnish each other with copies of any and all objections and requests for exclusion that come into their possession.

Any objector requesting access to confidential materials must first obtain leave of Court and agree to be bound by an agreed confidentiality order issued by the Court, which shall provide for the same confidentiality obligations that applied to the parties during the litigation and as provided by the Settlement Agreement and Release.

The Court hereby adopts the following settlement procedure:

|  | From Order Granting Preliminary Approval |
|---|---|
| Defendant will provide list of available addresses for Settlement Class Members to the Settlement Administrator | +21 Days |
| Defendant's payment of Settlement Fund to Settlement Administrator | +30 Days |
| Notice Date | +49 Days |
| Counsel's Motion for Attorneys' Fees and Reimbursement of Litigation Costs and Expenses | +95 Days |
| Objection Date | +109 Days |
| Opt-Out Date | +109 Days |
| Claim Deadline | +139 Days |

|  |  |
|---|---|
| Final Approval Hearing | November 4, 2025, at 1:30 p.m. |
| Motion for Final Approval | 14 Days before Final Approval Hearing |

|  | From Effective Date |
|---|---|
| Payment of Attorneys' Fees and Litigation Expenses and Class Representatives' Service Awards | +3 Days |
| Payment of Class Representatives' Service Awards | +30 Days |

A Fairness Hearing will be held on November 4, 2025 at 1:30 p.m. in Room 329, United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana.

**SO ORDERED.**

Date: 6/5/2025

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

24

Distribution:

All electronically registered counsel