UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LISA SMITH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> APRIA HEALTHCARE LLC, <br><br> Defendant. | Case No. 1:23-cv-01003-JPH-KMB |

### **MEMORANDUM SUPPORTING MOTION FOR FINAL APPROVAL**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs respectfully move the Court for an order (1) affirming its conditional class certification, for purposes of the Settlement Agreement only; (2) granting final approval to the proposed class action settlement with Defendant, the terms of which are set forth in the Settlement Agreement ("Settlement Agreement" or "SA") attached to the motion for preliminary approval as Exhibit A; (3) affirming the Court's appointment of Lisa Smith, Robert N. Herrera, Suzanne Cuyle, Leonardo DePinto, Joel Kamisher, Debbie Bobbitt, Dottie Nikolich, Sabrina Munoz, Hilary French, Elisa Stroffolino, Amy Clark, Reginald Reese, Rita May, Tammie Creek, Sonya Albert, Paul Kramer, Chad Hohenbery, Colleen Rickard, Kristinia Accardo, Roger Winstanley, and Bonnie Bennett as Settlement Class Representatives; and (4) affirming the Court's appointment of Lynn A. Toops of CohenMalad, LLP and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC as Class Counsel.

The Court previously granted preliminary approval to the Settlement Agreement, notice was sent to Settlement Class Members, and no Class Member has objected to the Settlement Agreement or any part of it. The Court should therefore grant final approval at the hearing scheduled for November 4, 2025, by entering the tendered Final Approval Order submitted

herewith, so that the Settlement can become final, the Class Members can obtain the Settlement benefits, and this matter can be resolved.

## I. INTRODUCTION

On June 5, 2025, this Court preliminarily approved a proposed class action settlement between Plaintiffs and Defendant Apria Healthcare, LLC ("Apria" or "Defendant" and together with Plaintiffs, the "Parties"). *See* ECF No. 135. Class Counsel's efforts created distinct monetary benefits for the approximately 1,859,047 Settlement Class Members in the form of a $6,375,000 non-reversionary common fund from which Settlement Class Members can (i) claim reimbursement for documented Out-of-Pocket Losses up to $2,000.00; and (iii) receive a pro rata share of the amounts remaining in the Settlement Fund after all costs and expenses are paid. Settlement Class Members will further benefit from equitable relief in the form of business practice adjustments that Defendant has made to address its information security posture following the Illegal Hacking Events.

The Settlement involved a comprehensive notice program and user-friendly claims process which has been (and continues to be) implemented by the Settlement Administrator, Kroll Settlement Administration ("Kroll"). *See* Declaration of Frank Ballard of Kroll Settlement Administration in connection with Final Approval of the Settlement ("Kroll Decl.") (attached hereto as **Exhibit 1**). The Court-approved notice program provided direct notice by U.S. mail, the creation of a toll-free telephone number to answer Settlement Class Members' questions, and the creation of a Settlement Website. *Id.* ¶¶ 6-8.

The reaction from Settlement Class Members has been positive and strongly supports final approval. The deadline to file objections or to request exclusion was September 22, 2025. *Id.* ¶ 16. No Settlement Class Members have objected and only twenty-four (24) have requested exclusion.

*Id*. ¶ 24. The deadline to submit a claim runs through October 22, 2025, and 40,605 claims have been received as of October 14, 2025. *Id*. ¶ 14. This works out to a claims rate of approximately 2.2% with just over a week until the Claims Deadline. This claims rate is commensurate with the claims rate in other large data breach settlements finally approved by courts. Considering the valuable benefits conveyed to Settlement Class Members, and the significant risks they would face through continued litigation, the Settlement is fair, reasonable, and adequate, and merits final approval.[1]

## II. SETTLEMENT TERMS

### A. The Settlement Class

The Settlement provides benefits for a nationwide Settlement Class defined as "All individuals who received actual or constructive notice from Apria that their information may have been compromised as a result of the Illegal Hacking Events." S.A. ¶ 1.45. Excluded from the Settlement Class are: (1) the judges presiding over the Class Action Lawsuit, members of their staff, and members of their direct families; (2) [Apria] and any other Releasee; (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id*.

### B. Class Member Benefits under the Settlement

If finally approved, the $6,375,000.00 non-reversionary Settlement Fund will be used to pay (1) Notice and Administrative Expenses; (2) Taxes and Tax-Related Expenses; (3) Service Award Payments approved by the Court; (4) Fee Award and Costs approved by the Court; (5) reimbursement for Out-of-Pocket Losses or Expenses; and (6) Pro Rata Cash Payments. *See* S.A.

---

[1] In the interest of judicial efficiency, for the factual and procedural background of the proposed Settlement, Plaintiffs respectfully refer the Court to, and hereby incorporate by reference, the case summary and procedural history in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support, filed on March 5, 2025, and Motion for Attorneys' Fees, Costs, and Service Awards filed on September 8, 2025. *See* ECF Nos. 134-1 and 136-1.

3

¶ 2.5. The monetary benefits to the Settlement Class Members are reimbursement of Out-of-Pocket Losses and Pro Rata Cash Payments.

### 1. *Reimbursement of Out-of-Pocket Losses.*

All Settlement Class Members may submit a claim for up to $2,000.00 for reimbursement of out-of-pocket monetary losses or expenses that are fairly traceable to and reasonably resulting from the Illegal Hacking Event. *Id.* ¶ 3.1. To receive reimbursement for Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form (either in paper form or on the Settlement Website) that includes the following: (i) third-party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the costs, if the nature of the costs is not apparent from the documentation alone. *Id.* ¶ 3.2. Third-party documentation can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the costs incurred. *Id.* Out-of-Pocket Losses Claim Forms may be submitted at any time on or before the date that is 90 days after entry of the Final Order Approving Settlement and Judgment. *Id.* Self prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. *Id.* A legal guardian for a Settlement Class Member who is under the age of 18 at the time of claim submission may submit a minor Claim Form seeking reimbursement of Out-of-Pocket Losses on the minor's behalf. *Id.*

### 2. *Pro Rata Cash Payment*

After the distribution of the Fee Award and Costs, Notice and Administrative Expenses, Service Award Payments, and Approved Claims for Out-of-Pocket Losses, the Settlement Administrator will make Pro Rata Cash Payments of the remaining Settlement Fund to each Settlement Class Member who submits a valid claim for this benefit. *Id.* ¶ 4.1.

*3.     Enhanced Data Privacy & Business Practices Commitments*

In connection with the Parties' settlement negotiations in the Class Action Lawsuit, Apria provided Plaintiffs with formal discovery regarding the Illegal Hacking Events and the security business practice adjustments that Apria has made to address its information security posture following the Illegal Hacking Events. S.A. ¶ 7.1. These Business Practice Adjustments are specific business practice and remedial measures within the following general categories: (i) enhanced cybersecurity training and awareness program, (ii) enhanced data security policies, (iii) enhanced security measures, (iv) further restricting access to personal information, and (v) enhanced monitoring and response capability. *Id.*

### III.   THE NOTICE PROGRAM

The Court appointed Kroll to disseminate class notice and to administer the Settlement. ECF No. 135. On June 24, 2025, Kroll received two (2) data files from the Defendant containing a total of 1,866,204. *Id*. ¶ 7. Kroll undertook several steps to review the Settlement Class List for the mailing of Notices, including standardizing the data for mailing, and removing 7,157 duplicate records, resulting in a Class List of 1,859,047 Settlement Class Members. *Id.* Kroll identified 215,233 records that did not contain a usable mailing address and an additional 26,608 records that contained a mailing address belonging to Defendant, resulting in a list of 1,617,206 individuals to whom Notice would be mailed. *Id.* Additionally, in an effort to ensure that Notices would be deliverable to Settlement Class Members, Kroll ran the Settlement Class List through the USPS's National Change of Address ("NCOA") database and updated the Settlement Class List with address changes received from the NCOA. *Id.*

As of October 21, 2025, 10,948 Notices were returned by the USPS with a forwarding address. *Id*. ¶ 10. Of those, 10,892 Notices were automatically re-mailed to the updated addresses

provided by the USPS. *Id*. The remaining fifty-six (56) Notices were re-mailed by Kroll to the updated address provided by the USPS. *Id*. As of October 21, 2025, 176,665 Notices were returned by the USPS as undeliverable as addressed, without a forwarding address. *Id*. ¶ 11. Kroll ran 175,765 undeliverable records through an advanced address search. *Id*. The advanced address search produced 102,995 updated addresses. *Id*. Kroll has re-mailed Notices to the 102,995 updated addresses obtained from the advanced address search. *Id*. Of the 102,995 re-mailed Notices, fifty-eight (58) have been returned as undeliverable a second time. Kroll will continue to trace and re-mail Notices up through the Final Approval Hearing. *Id*. Based on the foregoing, following all Notice re-mailings, Kroll has reason to believe that Notice via first-class mail likely reached 1,543,101 of the 1,832,439 Settlement Class Members, which equates to a reach rate of the direct mail notice of approximately 83.00%. *Id*. ¶ 12. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[2] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[3]

In addition to the direct notice, Kroll created a dedicated Settlement Website—https://www.apriasettlement.com. *Id*. ¶ 8. The Settlement Website "went live" on July 23, 2025, and contains a summary of the Settlement, important dates and deadlines such as the date of the Final Approval Hearing, Objection Deadline, Opt-Out Deadline and Claims Deadline, contact information for the Settlement Administrator, answers to frequently asked questions, downloadable copies of relevant documents, including the Long Form Notice, Claim Form,

---

[2] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.
[3] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d ed. 2010).

Settlement Agreement, Preliminary Approval Order, Complaint, a toll-free telephone number, and allowed Settlement Class Members an opportunity to file a Claim Form online. *Id*.

Finally, Kroll established a toll-free telephone number for Settlement Class Members to call and obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR") system and by being connected to a live operator. *Id*. ¶ 6.

The Notice Plan in this case was robust, and satisfied all due process requirements.

The Settlement has been well-received by the Settlement Class. Settlement Class Members have until October 22, 2025, to submit a claim. *Id*. ¶ 13. As of October 21, 2025, Kroll has received 41,092 Claim Forms. *Id*. ¶ 14.  Kroll is still in the process of reviewing and validating Claim Forms. *Id*. ¶ 14. As of October 21, 2025, Kroll has received 24 timely requests for exclusion and no objections. *Id*. ¶ 17.

In a comparable data privacy settlement, the court found that the class favored the settlement when 137 of the 2.4 million class members opted out of the settlement, one class member objected, and the claims rate was 1.46%. *See In re Forefront Data Breach Litig*., 2023 WL 6215366, at *4 (E.D. Wis Mar. 22, 2023). In comparison, this litigation includes 1,859,047 Class Members, but only 24 have requested exclusion and the claims rate is currently 2.2%, with just over a week still remaining until the Claims Deadline.[4]

Finally, no Settlement Class Members have objected to the proposed Settlement. The lack of objections and low number of opt-outs strongly supports a finding that the Settlement is "fair

---

[4] *See, e.g.*, *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *4 (E.D. Wis. Mar. 22, 2023) ("A claims rate of 1.46% is generally in line with the rate experienced in other data breach class actions."); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (finding 0.83% claims rate "on par with other consumer cases"); *In re Target Corp. Customer Data Sec. Breach Litig.*, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving settlement with roughly 0.23% claims rate); *Desue v. 20/20 Eye Care Network, Inc.*, 2023 WL 4420348, at *9 (S.D. Fla. July 8, 2023) (approving claims rate of 0.66%).

and reasonable." *See, e.g.*, *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (granting final approval of settlement with 25 objections & finding the fact that "99.9% of class members have neither opted out nor filed objections to the proposed settlements … is strong circumstantial evidence in favor of the settlements."). Plaintiffs submit the highly successful Notice Program implemented pursuant to the Settlement meets the requirements of due process and Federal Rule of Civil Procedure 23 and should be finally approved.

## IV.   LEGAL ARGUMENT

### A.   Final Class Certification for Settlement Purposes is Appropriate.

On June 5, 2025, this Court provisionally found that the Settlement Class met the requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy—and the requirements of Rule 23(b)—predominance and superiority. ECF No. 135. Since this Order, there have been no developments that would alter this preliminary finding. The Settlement Class should now be finally certified for settlement purposes.

### B.   The Rule 23(a) Requirements Remain Satisfied.

*Numerosity.* Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class of forty generally satisfies the numerosity requirement." *See, e.g.*, *Savanna Grp., Inc. v. Trynex, Inc.*, 2013 WL 66181, at *4 (N.D. Ill. 2013); *Karpilovsky v. All Web Leads, Inc.*, 2018 WL 3108884, at *6 (N.D. Ill. June 25, 2018) (same). Here, there are over 1.8 million Settlement Class Members. Joinder is therefore impracticable and the Settlement Class satisfies the numerosity requirement.

*Commonality.* The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "there are numerous

8

common contentions capable of class wide resolution" *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 922 (N.D. Ill. 2022) (cleaned up). Indeed, common questions include (i) whether Settlement Class Members' Private Information was compromised in the Illegal Hacking Events; (ii) whether Defendant owed a duty to Plaintiffs and Settlement Class Members to protect their Protected Information; (iii) whether Defendant breached its duties; and (iv) whether Defendant violated the common law and statutory violations. Thus, the commonality requirement is met.

***Typicality***. Plaintiffs satisfy the typicality requirement under Rule 23 because their claims based on Defendant's alleged failure to protect Plaintiffs' and Settlement Class Members' Private Information are coextensive with those of the absent class members. *See* Fed. R. Civ. P. 23(a)(3); *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (upholding typicality finding). Plaintiffs allege that their Protected Information was compromised and that they were impacted by the same inadequate data security that harmed the Settlement Class. *See Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008) (explaining that where defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met"). As such, typicality is met.

***Adequacy***. The adequacy requirement is satisfied where (i) there are no antagonistic interests between the named plaintiffs and their counsel and the absent class members; and (ii) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1085 (N.D. Ill. 2021). Here, Plaintiffs are members of the Settlement Class who allegedly experienced the same injuries and seek, like other Settlement Class Members, compensation for Defendant's alleged data security shortcomings. Plaintiffs have no conflicts of interest with other Settlement

Class Members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Settlement Class. Accordingly, the adequacy requirement is satisfied.

### C. The Rule 23(b)(3) Requirements Remain Satisfied.

Plaintiffs also seek to certify the Settlement Class, for settlement purposes only, under Rule 23(b)(3) which has two components: (i) predominance and (ii) superiority. Fed. R. Civ. P. 23(b)(3). Pursuant to Rule 23(b)(3), the Court must find that common questions of law or fact predominate over individual questions and that a class action is a superior method for the fair and efficient resolution of the matter. *Id.*

1. ***Predominance.*** The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). As discussed above, common questions predominate over any questions affecting only individual members. Plaintiffs' claims are based on Defendant's uniform conduct related to the Illegal Hacking Events that affected all Settlement Class Members in a similar manner. Plaintiffs' claims depend on whether Defendant used reasonable data security to protect their Protected Information. That question can be resolved, for settlement purposes, using the same evidence for all Settlement Class Members, and therefore, makes class-wide settlement appropriate. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)") (cleaned up); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 926 (finding predominance in data privacy case).

    *2.*  **Superiority**. Furthermore, class-wide resolution is the most practical method of addressing the alleged violations in this case. While the total economic harm caused by the Illegal Hacking Events is significant, each individual claim is small compared to the costs of litigating it separately. There are approximately 1.8 million Settlement Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See, e.g.*, *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 419 (N.D. Ill. 2007) ("Where, as here, a group of consumers typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure, class actions are superior to individual litigation."). Because the claims are being certified for purposes of settlement, there are no issues with manageability and resolution of thousands of claims in one action is superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Amchem*, 521 U.S. at 620. ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

  In sum, the proposed Class's claims satisfy Rule 23(b)(3)'s requirements and should be certified. Adjudicating individual actions here is impracticable—the amount in dispute for each class member is small, the technical issues involved are too complex, and the required expenses costly. Thus, the Court may continue to certify the Class for settlement.

  **D.**  **The Settlement Agreement Warrants Final Approval.**

  A class action settlement may only be approved after a hearing and a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). To determine whether a settlement is fair, adequate, and reasonable the Court considers the following factors:

> (A) the class representatives and class counsel have adequately represented the class;

>   (B) the proposal was negotiated at arm's length;
>   (C) the relief provided for the class is adequate, taking into account:
>       (i) the costs, risks, and delay of trial and appeal;
>       (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>       (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>       (iv) any agreement required to be identified under Rule 23(e)(3); and
>   (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These considerations overlap with the factors articulated by the Seventh Circuit prior to the amendment of Rule 23 in 2018 which include: (i) the strength of plaintiffs' case compared to the terms of the settlement; (ii) the complexity, length, and expense of continued litigation; (iii) the amount of opposition to the settlement; (iv) the presence of collusion in gaining a settlement; and (v) the stage of proceedings and amount of discovery completed. *See Hale v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 1287054, at *12–13 (S.D. Ill. Mar. 28, 2013) (citations omitted). Under these factors, approval of the Settlement is warranted.

### 1. Fed. R. Civ. P. 23(e)(2)(A): Class Representatives & Class Counsel have Adequately Represented the Settlement Class.

Class Counsel have ample experience litigating data breach class actions and are well-versed in the legal claims and risks of this case. As explained in Class Counsels' Joint Declaration submitted with Plaintiffs' Unopposed Motion for Preliminary Approval, Class Counsel worked diligently to advance Plaintiffs' and Settlement Class Members' interests. *See* ECF No. 134-3. Prior to reaching the Settlement, Class Counsel researched and drafted the complaints, consolidated their cases, filed the Consolidated Complaint, scheduled and participated in meet and confers with Counsel for Defendant, reviewed and propounded formal and informal discovery, responded to Defendant's Partial Motion to Dismiss, and participated in a mediation and subsequent settlement conference. *Id.*; *see also T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022) (granting final approval where "[t]he parties

engaged in substantial informal discovery and information sharing over a five-month period"); Manual for Complex Litigation (Fourth) § 13.12 (2004) (recognizing that the benefits of settlement are diminished if it is postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations); *id*. § 11.423 (courts are to "encourage counsel to exchange information, particularly relevant documents, without resort to formal discovery"). The procedural history of the case supports finding that Plaintiffs and the Settlement Class were adequately represented.

Plaintiffs are also adequate representatives of the Settlement Class. Plaintiffs' interests are coextensive with the interests of the Settlement Class. Here, as discussed *supra*, Plaintiffs' claims are aligned with the claims of the other Settlement Class Members. Accordingly, they have every incentive to vigorously pursue the claims of the Settlement Class as they have done to date by remaining actively involved in this Action since its inception, participating in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, and reviewing the Settlement Agreement. This factor favors final approval.

### 2. Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011); *see also Steele v. GE Money Bank*, No. 1:08-CIV-1880, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011), *report and recommendation adopted*, No. 1:08-CIV-1880, 2011 WL 13266498 (N.D. Ill. June 1, 2011).This presumption is applicable here because the Settlement resulted from good faith, arm's-length negotiations including a mediation with an experienced data breach class action mediator, Hon. Wayne R. Andersen (Ret.), a settlement conference with the United States Magistrate Kellie Barr, and numerous telephone conferences between experienced counsel with a

13

comprehensive understanding of the strengths and weaknesses of each party's claims and defenses. This Settlement was reached only after formal and informal discovery and meticulous investigation of the Illegal Hacking Events. This factor supports final approval of the Settlement.

### 3. Fed. R. Civ. P. 23(e)(2)(C): the Settlement Provides Substantial Relief.

    a.    Fed. R. Civ. P. 23(e)(2)(C)(i): the Costs, Risk, and Delay of Trial and Appeal Favor Final Approval.

The most important settlement-approval factor is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010).

The Settlement provides for substantial monetary relief, as well as equitable relief in the form of data security enhancements. All Settlement Class Members are eligible to submit a claim to have their documented Out-of-Pocket Losses reimbursed up to $2,000.00; and to receive a pro rata share of the amounts remaining in the Settlement Fund after all costs and expenses are paid. Settlement Class Members will further benefit from equitable relief in the form of Defendant implementing Business Practice Adjustments designed to address its information security posture following the Illegal Hacking Events.

The value achieved through the Settlement is guaranteed, whereas the chances of prevailing on the merits are uncertain. Although Plaintiffs believe in the merits of their claims, success is not guaranteed. Should litigation continue, Plaintiffs face significant risks. Data breach cases are complex, with novel issues and evolving laws posing hurdles even at the pleading stage. *See e.g., Hashemi v. Bosley, Inc.*, 2022 WL 18278431, at *28 (C.D. Cal. Nov. 21, 2022) (explaining that in

data breach class actions damages methodologies are largely untested and have yet to be presented to a jury). Class certification is another hurdle—and one that has been denied in other data breach cases. *See e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, 2024 WL 2155221 (D.S.C. May 14, 2024). Further, if litigation were to continue, Defendants would continue to vigorously defend the case and the litigation could potentially span for years. Considering all of this, Plaintiffs' likelihood of success at trial is not certain. Considering these risks, the $6,375,000 non-reversionary Settlement Fund is a substantial recovery for the Settlement Class. The Settlement benefits are, therefore, fair, adequate, and reasonable compared to the range of possible recovery.

      b. <u>Fed. R. Civ. P. 23(e)(2)(C)(ii): Method of Providing Relief is Effective.</u>

Under Rule 23(e), "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the Notice program and Claim Form were designed to encourage the filing of valid claims by Settlement Class Members. To file a claim, Settlement Class Members needed only to complete a simple Claim Form to opt into a pro rata cash payment and request reimbursement for out-of-pocket losses with documentation supporting any claimed losses.

Settlement Class Members were able to submit claims online or through the mail. This procedure is claimant-friendly, efficient, cost-effective, and reasonable under the particular circumstances of this case. This is evident by the number of claims received. As of October 21, 2025 (with the claim period still open until October 22, 2025), Kroll has received 41,092 claims from Settlement Class Members, which equates to a claims rate of approximately 2.2%. This compares favorably with claims rates observed in other data breach class action settlements. *See*

15

fn. 2 *supra.* Accordingly, the methods of distributing relief to Settlement Class Members further support that the Settlement is fair, reasonable, and adequate.

          c.      Fed. R. Civ. P. 23(e)(2)(C)(iii): Proposed Award of Attorneys' Fees is Fair and Reasonable.

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorneys' fees, including timing of payment." In accordance with Rule 23(e) and the Settlement Agreement, Class Counsel filed a motion seeking $1,699,212.44, or one third of the Settlement Fund, and $39,897.57 as reimbursement for litigation expenses. This fee and expense request falls in line with other awards in data privacy cases as discussed in Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. *See* ECF No. 136-1.

          d.      Fed. R. Civ. P. 23(e)(2)(C)(iv): No Additional Agreements.

As no additional agreements requiring identification exist, this factor does not weigh in favor of or against final approval.

### 4. Fed. R. Civ. P. 23(e)(2)(D): the Settlement Agreement Treats Settlement Class Members Equitably.

Finally, Rule 23(e) requires that the settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The proposed settlement does not discriminate between any members of the Settlement Class. All Settlement Class Members are eligible to submit a claim for documented Out-of-Pocket Losses up to $2,000.00 and a pro rata share of the amounts remaining in the Settlement Fund after all other costs and expenses are paid. Class Representatives seek a Service Award of $3,000 each. These requested awards are well within the range that Courts within the Seventh Circuit routinely approve. *See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (finding "a $5,000 reward is justified based on Kolinek's role working with class counsel, approving the settlement agreement and fee application, and volunteering to play an

16

active role if the parties continued litigating through trial"); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at * 16 (N.D. Ill. Feb. 28, 2012) (approving $25,000 service awards).

## CONCLUSION

For these reasons, the Court should grant Plaintiffs' motion and order the parties to distribute the class benefits.

Dated: October 21, 2025

/s/ *Lynn A. Toops*
Lynn A. Toops, No. 26386-49
Amina Thomas, No. 34451-49
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenmalad.com
athomas@cohenmalad.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
866.252.0878
gklinger@milberg.com

*Class Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 21, 2025, the foregoing was filed electronically via the CM/ECF system, which will serve all counsel of record via electronic mail.

> /s/ Lynn A. Toops
> Lynn A. Toops