UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LISA SMITH on behalf of herself and all others similarly situated, ELISA STROFFOLINO on behalf of herself and all others similarly situated, JOEL KAMISHER, DOTTIE NIKOLICH, SABRINA MUNOZ, HILARY FRENCH, AMY CLARK, REGINALD REESE, SONYA ALBERT, COLLEEN RICKARD, KRISTINA ACCARDO, ROGER WINSTANLEY, BONNIE BENNETT, <br><br>          Plaintiffs, <br><br>    v. <br><br>APRIA HEALTHCARE LLC, <br><br>          Defendant. | No. 1:23-cv-01003-JPH-KMB |

**FINAL CLASS SETTLEMENT APPROVAL ORDER**

Plaintiffs allege that Defendant Apria Healthcare LLC was the subject of a data breach in 2023 that affected millions of individuals. Dkt. 52. Plaintiffs have asked the Court for final approval of the Class Action Settlement Agreement and Release, dkt. 137, and to award attorneys' fees, dkt. 136. The Court has considered counsels' arguments that were presented at the November 4, 2025, Fairness Hearing and the filings submitted in support of approval, dkts. 136, 138, 141. For the reasons set forth below, the Court **GRANTS** the Unopposed

1

Motion for Final Approval, dkt. [137], and the Motion for Attorneys' Fees, dkt. [136], and **APPROVES** the Settlement Agreement.

## I.
## Facts and Background

On October 23, 2023, Plaintiffs filed its amended consolidated class action complaint. Dkt. 52. In it, Plaintiffs allege that Apria Healthcare, a home healthcare equipment provider, admitted that it suffered a data breach that affected millions of its patients and customers between April and May of 2019 and August and October of 2021 (the "Illegal Hacking Events"). *Id.* at 7 ¶ 43, 8 ¶ 46; dkt. 134-2 at 6 (Settlement Agreement and Release § 1.21). The Illegal Hacking Events compromised the private information of over 1.8 million Apria Healthcare patients. Dkt. 52 at 8 ¶ 46. This information included "Social Security numbers, personal details, medical records, health insurance information, and financial data." *Id.*

Plaintiffs allege that Apria Healthcare became aware of the Illegal Hacking Events in September 2021 but did not disclose the breach to customers until May 2023. *Id.* at 8–9 ¶ 48. Plaintiffs further allege that Apria Healthcare had a duty to adopt reasonable measures to protect Plaintiffs' protected information from involuntary disclosure to third parties. *See id.* For relief, "Plaintiffs demand that Apria compensate Settlement Class Members for their losses and protect their identities." Dkt. 134-1 at 3.

The Court preliminary certified the settlement class action, and approved notice and the procedure for notice to potential Class Members. Dkt. 135.

2

(Preliminary Approval Order).[1]  The Court also preliminarily approved the twenty-one proposed Class Representatives: Lisa Smith, Robert N. Herrera, Suzanne Cuyle, Leonardo DePinto, Joel Kamisher, Debbie Bobbitt, Dottie Nikolich, Sabrina Munoz, Hilary French, Elisa Stroffolino, Amy Clark, Reginald Reese, Rita May, Tammie Creek, Sonya Albert, Paul Kramer, Chad Hohenbery, Colleen Rickard, Kristinia Accardo, Roger Winstanley, and Bonnie Bennett. *Id.* at 3.  The preliminary certified class includes:

> [A]ll individuals who received actual or constructive notice and/or were mailed a notice by Apria that their information may have been compromised as a result of the Illegal Hacking Events and/or as a result of prior unauthorized access to or disclosure of Protected Information. Excluded from the Settlement Class are: (1) the judges presiding over the Class Action Lawsuit, members of their staff, and members of their direct families; (2) Defendant and any other Releasee; (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

*Id.* Last, the Court preliminarily approved Class Counsel. *Id.* at 13.

To settle the claims in this case, Apria agreed to pay $6,375,000 into a non-reversionary cash fund.  Dkt. 134-2 at 10–12 §§ 1.48, 2.2, 2.5 (Settlement Agreement and Release).  The Plaintiffs propose to deduct the following from that amount: a $3,000 service award to each of the twenty-one Class Representatives for a total of $63,000, *id.* at 22 § 15.3; $1,699,212.44 in attorneys' fees to Class Counsel, *id.* at § 15.1; dkt. 136-1 at 3; $39,897.57 for reimbursement of litigation costs to Class Counsel,

---

[1] The Court adopts and incorporates by reference the analysis and findings set forth in the Preliminary Approval Order, dkt. 135.

3

*id.*, and $1,211,210.08[2] for the quoted costs of notice and administration, dkts. 134-2 at 13 § 4.1; 141 at 2.

Pursuant to the Settlement Agreement, Class Members may submit a claim for up to $2,000 for reimbursement of out-of-pocket monetary losses or expenses that are traceable and reasonably resulting from the Illegal Hacking Event. Dkt. 134-2 at 12 § 3.1. To receive this reimbursement, Class Members must submit a Claim Form that (i) includes third-party documentation of the loss and (ii) a brief description of the documentation and loss if it is not apparent from the documentation alone. *Id.* at 12–13 § 3.2. These Claim Forms must be submitted on or before the date that is 90 days after entry of this Final Order Approving the Settlement and Judgment. *Id.* at 13 § 3.2.

After the distribution of out-of-pocket reimbursements, attorneys' fees, litigation costs, costs of notice and administration, and payment to the Class Representatives, the Settlement Administrator shall make cash settlement payments on a pro rata basis to each Settlement Class Member who submitted a valid claim for the benefit. *Id.* at 13 § 4.1. Lastly, Apria has agreed to make Business Practice Adjustments to enhance: cybersecurity training and awareness, data security policies, security measures, further restriction of access to personal information, and monitoring and response capability. *Id.* at 15 § 7.1. Apria shall bear the

---

[2] At the time of the hearing, the estimated notice and administration cost was $1,174,465.12. Dkts. 136-1 at 4; 140. However, the quoted estimation has now increased to $1,211,210.08. Dkt. 141 at 2 ¶ 3.

costs of these adjustments and shall modify the adjustments as necessary to ensure appropriate security. *Id.* at 15–16 § 7.2.

At the fairness hearing on November 4, 2025, the parties confirmed that 42,378 class members submitted claims (a 2.28% claims rate), 26 Class Members opted out, and there were no objections. Dkt. 140-1 (claim administrator's report). The Court ordered the Plaintiffs to submit supplemental briefing to their Motion for Fees, Expenses, and Costs, on the reasonableness of the $1,211,210.08 requested by the Claims Administrator. Dkt. 140 at 1.

## II.
## Legal Standard

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1987) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832 (1999) ("In drafting Rule 23(b), the Advisory Committee sought to catalogue in functional terms those recurrent life patterns which call for mass litigation through representative parties.").

Any settlement that results in the dismissal of a class action requires court approval. *See* Fed. R. Civ. P. 23(e); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). After preliminary review and a hearing, a "district court may approve a settlement of a class action if it concludes that it is 'fair, reasonable, and adequate.'" *Kaufman v. Am. Express Travel*, 877 F.3d 276, 283

(7th Cir. 2017) (quoting Fed. R. Civ. P. 23(e)(2)). "[D]istrict courts should act as the 'fiduciary of the class,' subject to the high duty of care that the law requires of fiduciaries." *Id.*

### III.
### Analysis

**A. Class Certification**

"Rule 23 gives the district courts 'broad discretion to determine whether certification of a class-action lawsuit is appropriate,'" *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2009), and "provides a one-size-fits-all formula for deciding the class-action question," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010). "A class 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,' and 'actual, not presumed, conformance with Rule 23(a) remains . . . indispensable.'" *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *Gen. Tel.*, 457 U.S. at 160–61); *see also Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 558 (7th Cir. 2003).

A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—and any one subsection of Rule 23(b). *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 513 (7th Cir. 2009); *Arreola*, 546 F.3d at 794. In addition, the class must meet two implied prerequisites of Rule 23: (1) that the class definition be sufficiently precise to enable a court to ascertain the identity of class members by reference to objective criteria; and (2) that the named representative be a

member of the proposed class. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

The fact that the parties have reached a settlement is relevant to the class-certification analysis. *See Smith v. Sprint Comms. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004); *Amchem Prods. v. Windsor*, 521 U.S. 591, 618–20 (1997). "'Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *Smith*, 387 F.3d at 614 (quoting *Amchem Prods.*, 521 U.S. at 620). A court may not, however, "abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.' In some ways, the Rule 23 requirements may be even more important for settlement classes." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). "This is so because certification of a mandatory settlement class, however provisional technically, effectively concludes the proceeding save for the final fairness hearing." *Ortiz*, 527 U.S. at 849.

The Court previously analyzed these factors and gave preliminary approval to class certification. Dkt. 135. The same reasons that supported the Court's preliminary approval of class certification also support final certification of the class. *Id.* at 9–11.

### B. Appointment of Class Counsel

After a court certifies a Rule 23 class, the court is required to appoint class counsel to represent the class members. *See* Fed. R. Civ. P. 23(g)(1). In appointing class counsel, the court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The Court previously considered these factors and designated Lynn A. Toops of Cohen & Malad LLP and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC as class counsel. Dkt. 135 at 15. There are no new facts that weigh against this decision.

### C. Notice

For settlement classes, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Preliminary Approval Order approved the content of the notice and proposed manner of notice. Dkt. 135 at 18–19. The Court now grants final approval of the notice, which adequately informed the Class members of the terms of the Settlement Agreement, the process available to obtain monetary relief, their right to request exclusion from the Class, and their opportunity to file written objections and appear to be heard at the Final Approval hearing. Dkt. 138-1 at 14–23. The Settlement Administrator, Frank Ballard of Kroll Settlement Administration LLC, used direct mailing of notice to putative class members and

established a phone number, email, and website to communicate and receive Class Member inquiries, which was included in the Class Notice. Dkt. 138-1 at 2–4 ¶¶ 5–9 (Ballard Decl.)

The parties have since followed the manner of notice set forth in the Settlement Agreement and the Preliminary Approval Order. Dkt. 138-1. The notices were mailed to 1,617,206 Class Members. Dkt. 138-1 at 4 ¶ 9. 176,665 Notices were returned as undeliverable. *Id.* at ¶ 11. Of those, Kroll found updated addresses for 102,995 and re-mailed to those addresses. *Id.* From those, 435 were returned as undeliverable. *Id.* In sum, 1,543,101 of the 1,832,439 Settlement Class Members received direct mail Notice, which equates to approximately 83.00% of the class. *Id.* at ¶ 12. Thus, the Court approves manner of notice to class members under the requirements of Fed. R. Civ P. Rule 23(e)(1)(B).

### D. Motion for Attorney's Fees and Costs

#### i. Attorney's Fees

Under Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." "In assessing the reasonableness of an attorney fee award for a class action settlement, district courts should do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 832–33 (7th Cir. 2018). When considering reasonableness, district courts may consider the award either

9

as a percentage of the fund or through the lodestar method. *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014).

Here, applying the percentage of fund method, Class Counsel is requesting an attorney's fee award that represents 33.57% of the overall fund.[3]

Requests for one-third of the settlement are within the normal rate of compensation for data breach class action settlements in the Seventh Circuit. *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) (granting one-third fee in data breach case noting "[a] one-third flat fee is also routine for class action settlements in similarly complex fields"). Although the fee requested is slightly above 33.33%, an attorney's fee award of 33.57% is within range of the typical contingency fee charged by class action lawyers. *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("The typical contingent fee is between 33 and 40 percent."); *see also In re Forefront Data Breach Litig.*, No. 21-cv-887, 2023 WL 6215366, at *8 (W.D. Wis. 2023) (finding a fee amounting to 41% of settlement fund in a data breach case as reasonable).

---

[3] The "ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack*, 768 F.3d 622, 630 (7th Cir. 2014). The value of the settlement is the amount minus the fee requested, the administration and notice costs, litigation costs, and approved service awards. *Id.* at 630. Here, to calculate the value that will go to Class Members, take the total class value ($6,375,000.00) minus the requested fees ($1,699,212.44), minus litigation expenses ($39,897.57) minus the quoted costs of notice and administration ($1,211,210.08) minus the requested service awards ($63,000 total), which equals $3,361,679.91. To calculate the percentile of the attorneys' fees, take the requested amount of fees ($1,699,212.44) over the total class value plus requested fee ($3,361,679.91 + $1,699,212.44), which equals 33.57%.

10

Therefore, the Court approves as reasonable an attorneys' fee award of $1,699,212.44.

### ii. Settlement Administrator Costs

Plaintiffs request an estimated $1,211,210.08 in costs of notice and administration. Dkts. 136-1 at 4, n. 1; 141 at 2. Plaintiffs' Motion for Attorneys' Fees and Costs, and Mr. Ballard's Declaration, did not include itemization or explanation on the reasonableness of these requested costs, *id.*; dkt. 138-1 (Ballard Decl.), so the Court therefore ordered Plaintiffs to file a supplemental brief explaining the reasonableness of these costs and how much of that amount is for reimbursement of out-of-pocket expenses. Dkt. 140. Plaintiffs filed a supplemental declaration from Mr. Ballard which explained that Kroll Administration, LLC has billed, as of November 6, 2025, $982,265.60 for services and fees and anticipates billing an additional $228,944.48, for a total of $1,211,210.08. Dkt. 141 at 2. Mr. Ballard itemized these costs:

| | |
|---|---|
| **Project Team Hours Spent on Project** | $26,831.00 |
| **Correspondence from Class Members** | $3,210.00 |
| **Case Setup/Notice Prep/Website Creation** | $10,130.00 |
| **Notice Costs (Noticing, Tracing, Remailing)** | $203,691.81 |
| **Contact Center Costs** | $40,868.30 |
| **Monthly Admin Costs** | $1,050.00 |
| **Claim Form Costs** | $16,635.30 |
| **Mail handling/Scanning Costs** | $1,687.80 |
| **Postage** | $678,161.39 |
| **Estimated Costs to Complete** | $228,944.48 |
| | |
| **Total** | $1,211,210.08 |

*Id.* Mr. Ballard then explained that the high costs associated with the notice and administration reflects the large scope of the Settlement Class, 1,868,598 Class Members, which amounted significant costs in mailing expenses and postage.

11

*Id.* Additionally, Mr. Ballard explains that the anticipated future costs reflect the anticipated time and cost of re-mailing notices, mailing deficiency notices, and the distribution of claims. *Id.*

The notice and administration costs requested here are similar to those requested and granted in other cases with similar class sizes, and otherwise appear reasonable. *In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 757 (E.D. Wis. 2024) (notice and administration costs of $5,152,929.51 for notification to 2.5 million class members); *Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15-DGW, 2006 WL 5062697 (S.D. Ill. 2006) (approving notice costs of $1.2 million for "a nationwide class . . . which potentially has thousands of members"). Therefore, the Court approves the requested $1,211,210.08 in notice and administration costs as reasonable.

### E. Final Settlement Approval

The Court may approve the settlement only after finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) requires the Court to consider whether (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the relief provided by the settlement is adequate, and (4) the proposal treats class members equitably relative to each other. Additionally, the Seventh Circuit has also identified the following factors as considerations under Rule 23(e)(2): "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of

members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)

The Court previously considered these factors in connection with granting preliminary approval to the Settlement Agreement. Dkt. 135 at 14–18. At the fairness hearing, the Court heard additional arguments from counsel on "the strength of the case for plaintiffs on merits, balanced against the extent of the settlement offer." *Wong*, 773 F.3d at 859. This is "[t]he most important factor relevant to the fairness of a class action settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

In balancing the strength of the plaintiffs' case against the amount offered in a proposed settlement, district courts "should begin by quantifying the net expected value of continued litigation to the class . . . [t]o do so, the court should 'estimate the range of possible outcomes and ascribe a probability to each point on the range.'" *Synfuel*, 463 F.3d at 653 (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). However, more recently, the Circuit has clarified that "the *Synfuel/Reynolds* evaluation of potential outcomes need not always be quantified, particularly where there are other reliable indicators that the settlement reasonably reflects the merits of the case." *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 285 (7th Cir. 2017). Other reliable indicators include extensive arm's-length negotiations with a third-party mediator, and the parties contentiously litigating a motion to dismiss. *Wong*, 773 F.3d at 864.

13

Here, considering the parties' filings and arguments at the fairness hearing, the Court is satisfied that this case bears these reliable indicators of fairness, reasonableness, and adequacy. Specifically, this Settlement Agreement was reached at a Settlement Conference with Magistrate Judge Barr after a previously unsuccessful formal mediation with Judge Wayne R. Andersen. Dkt. 136-1 at 2–3. Further, this case was contentiously litigated, Defendants filed a partial motion to dismiss under Rule 12(b)(3) arguing that some of the named Plaintiffs agreed to arbitration under their employment agreements. *See* dkt. 59. That motion was stayed, however, for the Settlement Conference. Dkts. 97; 109.

Last, Plaintiffs' counsel enumerated at the fairness hearing and in their supporting briefs that they undertook a significant risk in bringing this litigation, because data breach cases often face significant risks in proceeding past the motion to dismiss phase, and courts "have not settled on whether plaintiffs can certify classes or survive summary judgment" in these cases. Dkt. 134-1; *see Fox v. Iowa Health Sys.*, No. 3:18-cv-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."). Here, considering the risks and the real benefits provided to the Class Members at this time—up to $2,000 in out-of-pocket expenses with documented proof and pro rata payments without proof—the strength of the Plaintiffs' case compared to the Defendants' proposed relief weighs in favor of fairness, reasonableness, and adequacy of the Settlement Agreement.

For these reasons, and the reasons that supported the Court's preliminary approval of class certification, dkt. 135 at 14–17, the Settlement is fair, reasonable, and adequate.

## IV.
## Conclusion

The Joint Motion for Final Approval of Class Action Settlement and Plaintiffs' Motion for Attorney's Fees are **GRANTED**. Dkts. [136] and [137].

After holding a hearing, the Court **GRANTS FINAL APPROVAL** of the class settlement as a fair, adequate, and reasonable compromise of a bona fide dispute under Federal Rule of Civil Procedure 23(e)(2). Plaintiffs and Apria, and their counsel, are directed to implement and consummate the Settlement Agreement according to its terms and conditions.

The Court further finds and orders as follows:

1. The previously certified Class is finally certified under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes.

2. The Court confirms the appointments of (a) Named Plaintiffs Lisa Smith, Robert N. Herrera, Suzanne Cuyle, Leonardo DePinto, Joel Kamisher, Debbie Bobbitt, Dottie Nikolich, Sabrina Munoz, Hilary French, Elisa Stroffolino, Amy Clark, Reginald Reese, Rita May, Tammie Creek, Sonya Albert, Paul Kramer, Chad Hohenbery, Colleen Rickard, Kristinia Accardo, Roger Winstanley, and Bonnie Bennett as Class Representatives of the Settlement Class, (b) Lynn A. Toops of Cohen & Malad LLP and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC as Class

Counsel, and (c) Kroll Settlement Administration, LLC as the Settlement Administrator of the claims process.

3. Per the Settlement Agreement, Apria agrees to pay $6,375,000 into a non-reversionary cash fund.  From that amount, the Court approves: a $3,000 service award to each of the Class Representatives, for a total of $63,000; $1,699,212.44 in attorneys' fees to Class Counsel, $39,897.57 for reimbursement of litigation costs to Class Counsel, and $1,211,210.08 for the quoted costs of notice and administration.  These payments shall be made from the Settlement Fund according to the procedures set forth in the Settlement Agreement.

4. The Class Members shall receive their settlement shares according to the procedures set forth in the Settlement Agreement.

5. The Court orders that all Class Members are bound by the terms of the Settlement Agreement and fully release and discharge their claims.

Based on this settlement, this matter is **DISMISSED WITH PREJUDICE**.

Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 11/17/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel.